**CROSNER LEGAL, P.C.**
Lilach H. Klein (SBN 323202)
*lilach@crosnerlegal.com*
Michael T. Houchin (SBN 305541)
*mhouchin@crosnerlegal.com*
Zachary M. Crosner (SBN 272295)
*zach@crosnerlegal.com*
9440 Santa Monica Blvd. Suite 301
Beverly Hills, CA 90210
Tel: (866) 276-7637
Fax: (310) 510-6429

*Attorneys for Plaintiffs and the Proposed Class*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN BOYD and JANA RABINOWITZ, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>SUNBUTTER, LLC,<br><br>Defendant. | Case No.<br><br>CLASS ACTION COMPLAINT SEEKING STATEWIDE OR NATIONWIDE RELIEF<br><br>**JURY TRIAL DEMANDED** |

<u>**INTRODUCTION**</u>

1.      Defendant SunButter, LLC ("Defendant") sells two sunflower butter products called SunButter No Sugar Added Sunflower Butter and SunButter Organic Sunflower Butter (the "Products"). Defendant represents that the Products are healthy and made with non-toxic ingredients. Specifically, Defendant includes the following statements on the labels of the Products:  "Simple Ingredients," "Non-GMO Verified," "Certified Gluten Free," "USDA Organic," "Free from the Top 8 Allergens," "Naturally Savory & Satisfying," and "SunButter is . . . bursting with flavor & nutrition."

2.      Unfortunately, Defendant misleads consumers about the health benefits and quality of the Products and fails to disclose that the Products contain unsafe and unlawful levels of cadmium— a known human carcinogen that is linked to a myriad of health issues.

3.      On August 15, 2024, the website ConsumerLabs.com published results of testing performed on various sunflower butter products. Those test results revealed that the SunButter No Sugar Added Sunflower Butter product tested positive for 16.4 micrograms of cadmium and that the SunButter Organic Sunflower Butter product tested positive for 19.5 micrograms of cadmium.[1] In California, products that test positive for more than 4.1 micrograms of cadmium must display a Proposition 65 warning label. However, Defendant fails to disclose the high levels of cadmium in the Products thereby deceiving consumers.

4.      Plaintiffs John Boyd and Jana Rabinowitz ("Plaintiffs") now bring this action seeking redress for Defendant's false adverting and deceptive conduct.

<u>**JURISDICTION AND VENUE**</u>

5.      This Court has original jurisdiction over this action pursuant to 28

---

[1] Tod Cooperman, *High Levels of Toxin Found in Most Sunflower Seeds and Butters,* CONSUMERLABS.COM, *available at* https://www.consumerlab.com/reviews/sunflower-seeds-and-butters/sunflower-food/ (last visited September 13, 2024).

CLASS ACTION COMPLAINT

CROSNER LEGAL. P.C.

U.S.C. § 1332(d) because this is a class action in which: (1) there are over 100 members in the proposed class; (2) members of the proposed class have a different citizenship from Defendant; and (3) the claims of the proposed class members exceed $5,000,000 in the aggregate, exclusive of interest and costs.

6.    This Court has personal jurisdiction over Defendant because Defendant conducts and transacts business in the State of California, contracts to supply goods within the State of California, and supplies goods within the State of California. Defendant, on its own and through its agents, is responsible for the formulation, ingredients, manufacturing, labeling, marketing, and sale of the Products in California, specifically in this district. The marketing of the Products, including the decision of what to include and not include on the labels, emanates from Defendant. Thus, Defendant has intentionally availed itself of the markets within California through its advertising, marketing, and sale of the Products to consumers in California, including Plaintiffs. The Court also has specific jurisdiction over Defendant as it has purposefully directed activities towards the forum state, Plaintiffs' claims arise out of those activities, and it reasonable for Defendant to defend this lawsuit because it has sold harmful Products to Plaintiffs and members of the Class in California. By distributing and selling the Products in California, Defendant has intentionally expressly aimed conduct at California which caused harm to Plaintiffs and the Class which Defendant knows is likely to be suffered by Californians.

7.    Venue is proper in this District pursuant to 28 U.S.C. §1391(b) because Defendant engages in continuous and systematic business activities within the State of California. Venue is further proper pursuant to 28 U.S.C. §1391(b) because a substantial part of the events or omissions giving rise to the claim occurred in this District because Plaintiffs purchased one of the Products within this District.  Venue is also proper in this District pursuant to Cal. Civ Code. § 1780(c) because Defendant is doing business in this District, and Plaintiff Boyd

CROSNER LEGAL, P.C.

1  purchased a Product at issue in this District.

2  <center>**PARTIES**</center>

3      8.      Defendant SunButter, LLC is a North Dakota limited liability

4  company that maintains its principal place of business at 501 42nd St. N Fargo,

5  ND, 58102. Throughout the Class Period defined herein, Defendant was the

6  manufacturer and distributor of the Products.

7      9.      Plaintiff John Boyd is a resident of Los Angeles County, California.

8  Plaintiff purchased the SunButter No Sugar Added Sunflower Butter product

9  several times in 2023 from a Target in California. Plaintiff Boyd relied on

10  Defendant's deceptive labeling claims as set forth below.

11      10.     Plaintiff Jana Rabinowitz is a resident of Nassau County, New York.

12  Plaintiff purchased the SunButter Organic Sunflower Butter product twice in 2024

13  at a retail store in Nassau County. Plaintiff Rabinowitz relied on Defendant's

14  deceptive labeling claims as set forth below.

15  <center>**FACTUAL ALLEGATIONS**</center>

16  <center>**THE LABELS OF THE PRODUCTS LEAD REASONABLE CONSUMERS TO BELIEVE**</center>

17  <center>**THAT THE PRODUCTS ARE HEALTHY AND MADE WITH NON-TOXIC**</center>

18  <center>**INGREDIENTS**</center>

19      11.     Defendant manufactures two sunflower butter products called

20  SunButter No Sugar Added Sunflower Butter and SunButter Organic Sunflower

21  Butter. The labels for each of these products give reasonable consumers the

22  impression that the Products are healthy and made with quality ingredients and do

23  not contain unlawful levels of heavy metals. For example, the labels on each of the

24  Products state: "Simple Ingredients," "Non-GMO Verified," "Certified Gluten

25  Free," "Free from the Top 8 Allergens," and "Naturally Savory & Satisfying." The

26  net-effect or net-impression of the Products' labeling on consumers is that the

27  Products do not contain any potentially harmful ingredients like high levels of

28  cadmium.

<center>3</center>

CROSNER LEGAL, P.C.

12.    The front and side labels for each of the Products are shown below:

<u>SunButter No Sugar Added Sunflower Butter</u>

 

//
//
//
//
//
//
//
//
//
//
//
//

CLASS ACTION COMPLAINT

CROSNER LEGAL, P.C.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

CROSNER LEGAL, P.C.

SunButter Organic Sunflower Butter



**TESTING REVEALS THAT THE PRODUCTS CONTAIN HIGH LEVELS OF CADMIUM**

13.    Defendant has known since at least May 24, 2022 that its Products contain unsafe amounts of cadmium. On May 24, 2022, Ecological Alliance, LLC sent SunButter, LLC, *et al*. a notice that SunButter sunflower butter products unlawfully exposed consumers to cadmium without the proper required Proposition 65 warnings.[2] The letter notified SunButter, LLC that such exposure to cadmium "can cause cancer, birth defects and other reproductive harm." *Id*. Additionally, "[e]xposures to [cadmium] from the use of the Products have been occurring without the clear and reasonable warnings required by Proposition 65,

---

[2] *See* https://oag.ca.gov/prop65/60-Day-Notice-2022-01042 (last visited September 13, 2024).

dating as far back as May 24, 2021, and will continue every day until clear and reasonable warnings are provided to product purchasers and users or until this known toxic chemical is removed from the Products. Without proper warnings regarding the toxic effects of exposures to the listed chemical resulting from contact with the Products, California citizens lack the information necessary to make informed decisions on whether and how to eliminate (or reduce) the risk of exposure to the listed chemical from reasonable foreseeable use of the Products." *Id.*

14.    Sunflower butter can be manufactured with cadmium levels below California's maximum allowable dose of 4.1 mcg. Sunflower butter products made by Defendant's competitors, such as Once Again, do not contain high levels of cadmium.[3]

15.    Defendant could have, but failed, to take steps to reduce or remove the cadmium in the Products. Defendant also failed to warn consumers that consuming the Products exposes them to unsafe levels of cadmium.

16.    On August 15, 2024, the website ConsumerLabs.com published results of testing performed on various sunflower butter products.[4] Those test results revealed that the SunButter No Sugar Added Sunflower Butter product tested positive for 16.4 micrograms of cadmium and that the SunButter Organic Sunflower Butter product tested positive for 19.5 micrograms of cadmium.

17.    ConsumerLab deemed the SunButter No Sugar Added Sunflower Butter and the SunButter Organic Sunflower Butter products "not approved" because both Products exceeded 4.1 micrograms of cadmium per suggested

---

[3] https://www.consumerlab.com/reviews/sunflower-seeds-and-butters/sunflower-food/

[4] Tod Cooperman, *High Levels of Toxin Found in Most Sunflower Seeds and Butters,* Consumerlabs.com, *available at* https://www.consumerlab.com/reviews/sunflower-seeds-and-butters/sunflower-food/ (last visited September 13, 2024).

CROSNER LEGAL, P.C.

CLASS ACTION COMPLAINT

1    serving.

2        18.    ConsumerLab utilized 4.1 micrograms of cadmium per suggested

3    serving as the benchmark for whether a product would be approved. This number

4    was chosen because California law provides that 4.1 micrograms per day of

5    cadmium is the maximum allowable daily value of cadmium exposure by oral

6    route pursuant to California's Safe Drinking Water and Toxic Enforcement Act of

7    1986 ("Proposition 65"), Cal. Health & Safety Code § 25249.5, *et seq.*[5] In other

8    words, a food product that exceeds the 4.1 micrograms maximum allowable daily

9    value of cadmium must be labeled as a known carcinogen. Despite testing four

10   times higher than 4.1 micrograms of cadmium, Defendant failed to disclose to

11   consumers that the Products contain known carcinogens and high levels of

12   cadmium.

13       19.    Below is a screenshot of the ConsumerLab test results.

14   //

15   //

16   //

17   //

18   //

19   //

20   //

21   //

22   //

23   //

24   //

25   //

26   //

27

28   _____

[5] *See* https://oehha.ca.gov/media/downloads/crnr/cadmium20madl.pdf

CROSNER LEGAL, P.C.

7

CROSNER LEGAL, P.C.

### Test Results by Product:

| Approval Status ⓘ<br>Product Name | Serving Size<br>Heavy Metals ⓘ<br>Microbes ⓘ | Cost Per Suggested Serving<br>[Per 30 g Serving]<br>Origin | Calories ⓘ<br>Total Fat/ Sat/ Trans (g) ⓘ<br>Cholesterol (mg) ⓘ<br>Sodium (mg) ⓘ |
|---|---|---|---|
| **NOT APPROVED**<br>SunButter® No Sugar Added Sunflower Butter ⊕<br><br>Mfd. by Sunbutter® LLC | 2 tbsp [32 g]<br><br>**Metals: FAIL**<br>Cadmium: 17.5 mcg [equivalent to 16.4 mcg per 30 g serving]<br>Lead: 0.03 mcg<br>Arsenic: ND<br>Mercury: ND<br><br>**Microbes: Pass**<br>*E. coli*: absent<br>Yeast & mold: <10 CFU/g<br>Salmonella: absent<br>Listeria: absent | $0.53/2 tbsp<br><br>[$0.49]<br><br>$7.39/16 oz [454 g] jar (approx. 14 servings)<br><br>Origin: Pride of Dakota North Dakota Originals<br><br>*Taste: Smooth but somewhat runny, mild sunflower/peanuty flavor. Added salt (110 mg sodium per 2 tbsp) is barely perceptible.* | 2 tbsp<br><br>200<br><br>18 / 2 / 0<br><br>0<br><br>110<br>[Found 25.1 mg ✓] |
| **NOT APPROVED**<br>SunButter® Organic Sunflower Butter ⊕<br><br>Mfd. by Sunbutter® LLC | 2 tbsp [32 g]<br><br>**Metals: FAIL**<br>Cadmium: 20.8 mcg [equivalent to 19.5 mcg per 30 g serving]<br>Lead: 0.03 mcg<br>Arsenic: 0.32 mcg<br>Mercury: ND<br><br>**Microbes: Pass**<br>*E. coli*: absent<br>Yeast & mold: <10 CFU/g<br>Salmonella: absent<br>Listeria: absent | $0.65/2 tbsp<br><br>[$0.61]<br><br>$9.09/16 oz [454 g] jar (approx. 14 servings)<br><br>Origin: Pride of Dakota North Dakota Originals<br><br>*Taste: Smooth, easy to spread, slightly dry, mild sunflower flavor.* | 2 tbsp<br><br>220<br><br>19 / 2 / 0<br><br>0<br><br><5 |

**EXPOSURE TO CADMIUM IS HARMFUL TO HUMAN HEALTH**

20.    Cadmium is a heavy metal and its presence in food poses a serious safety risk to consumers because it is a cancer-causing agent. "The Department of Health and Human Services (DHHS) has determined that cadmium and cadmium

CLASS ACTION COMPLAINT

compounds are known human carcinogens."[6] The Centers for Disease Control has recognized "that there is no safe level of exposure to a carcinogen."[7]

21.    "[A]ny cadmium exposure should be avoided."[8] According to the Centers for Disease Control and Prevention, exposure to even low levels of cadmium over time may build up cadmium in the kidneys and cause kidney disease.[9] And, because cadmium builds up in the body, even at low dosage, repeated exposure can cause lung damage and fragile bones. *Id*. Consuming cadmium can also severely irritate the stomach, causing vomiting and diarrhea. *Id*.

22.    Research has linked cadmium exposure with kidney dysfunction and decreases in bone mineral density.[10] Indeed, cadmium "is a toxic heavy metal" that is a "severe health threat" to humans.[11] Cadmium "largely accumulates in kidneys,

---

[6] *ToxFAQs for Cadmium,* CDC AGENCY FOR TOXIC SUBSTANCES AND DISEASE REGISTRY, *available at* https://wwwn.cdc.gov/TSP/ToxFAQs/ToxFAQsDetails.aspx?faqid=47&toxid=15#:~:text=Eating%20food%20or%20drinking%20water,lung%20damage%20and%20fragile%20bones (last visited September 13, 2024).

[7] NIOSH Chemical Carcinogen Policy, Centers for Disease Control, available at https://www.cdc.gov/niosh/cancer/about/niosh-chemical-carcinogen-policy.html?CDC_AAref_Val=https://www.cdc.gov/niosh/topics/cancer/policy.html (last visited September 13, 2024).

[8] M. Nathaniel Mead, Cadmium Confusion: Do Consumers Need Protection? Environmental Health Perspectives, Dec. 2010, available at https://www.ncbi.nlm.nih.gov/pmc/articles/PMC3002210/ (last visited September 13, 2024).

[9] *ToxFAQs for Cadmium,* CDC Agency for Toxic Substances and Disease Registry, *available at* https://wwwn.cdc.gov/TSP/ToxFAQs/ToxFAQsDetails.aspx?faqid=47&toxid=15#:~:text=Eating%20food%20or%20drinking%20water,lung%20damage%20and%20fragile%20bones (last visited September 13, 2024).

[10] Soisungwan Satarug, et al., *Adverse Health Effects of Chronic Exposure to Low-Level Cadmium in Foodstuffs and Cigarette Smoke,* ENVIRONMENTAL MEDICINE VOL. 112, No. 10, *available at* https://ehp.niehs.nih.gov/doi/full/10.1289/ehp.6751 (last visited September 13, 2024).

[11] Mei Wang, et al., *A review on Cadmium Exposure in the Population and Intervention Strategies Against Cadmium Toxicity,* BULLETIN OF ENVIRONMENTAL CONTAMINATION AND

CROSNER LEGAL, P.C.

1    liver, bone and other organs and causes irreversible damage to the target organs."
2    *Id*.

3        23.    Because cadmium is a cancer-causing agent, California has placed
4    cadmium on the Proposition 65 list. According to the Proposition 65 website,
5    "[e]xposure to cadmium and cadmium compounds can cause cancer of the lung
6    and may cause cancer of the prostate and kidney."[12] "Cadmium is also on the
7    Proposition 65 list because it can cause birth defects or other reproductive harm.
8    Exposure to cadmium may harm a man's reproductive system. Exposure during
9    pregnancy may affect a child's development." *Id*.

10        24.    The California Office of Environmental Health Hazard Assessment
11    ("OEHHA") sets an oral cadmium maximum allowable dose level of 4.1
12    micrograms per day.[13]

13        25.    The U.S. Food and Drug Administration (FDA) developed an oral
14    toxicological reference value (TRV) for characterizing potential health concerns
15    from dietary exposure to cadmium, and to determine if the amount of exposure to
16    the contaminant in food is a potential health concern. The TRV set by the FDA is
17    0.21–0.36 micrograms (µg) per kilogram of body weight per day.[14] For a 120 lb
18    person, the TRV would be approximately 13.5 mcg per day. "In determining this
19    TRV, the FDA conducted extensive research to understand the relationship
20

21    _____
22    TOXICOLOGY (Jan. 23, 2021), *available at* https://link.springer.com/article/10.1007/s00128-020-03088-1 (last visited September 13, 2024).

23    [12] *Cadmium and Cadmium Compounds,* PROPOSITION 65- YOUR RIGHT TO KNOW!, *available at*
24    https://www.p65warnings.ca.gov/fact-sheets/cadmium-and-cadmium-compounds (last visited September 13, 2024).

25    [13] *Cadmium*, OEHHA, *available at* https://oehha.ca.gov/proposition-65/chemicals/cadmium
26    (last visited September 13, 2024)

27    [14] *Reassessment of the cadmium toxicological reference value for use in human health assessments of foods,* NIH, *available at* https://pubmed.ncbi.nlm.nih.gov/37640100/ (last visited
28    September 13, 2024).

CROSNER LEGAL, P.C.

between dietary cadmium exposure and potential adverse health effects. As a result of this research, the FDA identified health effects on bone and kidneys as the most sensitive health outcome associated with cadmium exposure."[15]

26.    Cadmium oral intake levels of 16.4 and 19.5 micrograms that the Products tested for far exceed recognized US health standards. The cadmium at the levels present in the Products poses an unreasonable safety hazard to consumers and the Products are not healthy to consume.

### PLAINTIFFS' EXPERIENCE

27.    Plaintiff Boyd purchased the SunButter No Sugar Added Sunflower Butter product a few times in 2023 from a Target store in Hollywood or West Hollywood. Plaintiff Rabinowitz purchased the SunButter Organic Sunflower Butter product on approximately two occasions from a retail store in Nassau County in 2024. Plaintiffs were not aware of the high levels of cadmium in the Products. After reading the label, Plaintiffs purchased the Products on the assumption that the Products did not contain harmful substances like cadmium. Plaintiffs saw and relied on the following labeling statements "Simple Ingredients," "Non-GMO Verified," "Certified Gluten Free," "USDA Organic," "Free from the Top 8 Allergens," "Naturally Savory & Satisfying," and "SunButter is . . . bursting with flavor & nutrition." The Products' labeling statements created the net impression that the Products are healthy and do not contain potentially harmful ingredients like high levels of cadmium. Plaintiffs would not have purchased the Products had they known the Products contain high levels of cadmium, a substance which is known to be hazardous to human health. As a result, Plaintiffs suffered an injury in fact when they spent money to purchase

---

[15] *Cadmium in Food and Foodwares*, U.S. Food & Drug Administration, available at https://www.fda.gov/food/environmental-contaminants-food/cadmium-food-and-foodwares (last visited September 13, 2024).

CROSNER LEGAL, P.C.

CLASS ACTION COMPLAINT

Products they would not have purchased absent Defendant's misconduct. Plaintiffs are not bringing a personal injury claim.

28.    Plaintiffs have not purchased the Products after learning that they contain high levels of cadmium. Plaintiffs continue to see the Products for sale at retail stores in California and New York and desire to purchase the Products again if the Products did not contain high levels of cadmium. However, as a result of Defendant's ongoing misrepresentations and material omissions, Plaintiffs are unable to rely on the Products' labeling when deciding in the future whether to purchase the Products.

29.    Plaintiffs did not notice any disclaimer, qualifier, or other explanatory statement or information on the Products' labeling or packaging that disclosed that the Products contained high levels of cadmium. At the time of Plaintiffs' purchases, they did not know the Products contained high levels of cadmium.

## REASONABLE CONSUMERS ARE DECEIVED BY DEFENDANT'S MISREPRESENTATIONS AND OMISSIONS

30.    Consumers, like Plaintiffs, relied on Defendant's labeling statements set forth above, including the statements: "Simple Ingredients," "Non-GMO Verified," "Certified Gluten Free," "USDA Organic," "Free from the Top 8 Allergens," "Naturally Savory & Satisfying," and "SunButter is . . . bursting with flavor & nutrition." The net-effect or net-impression of the Products' labeling on consumers is that the Products do not contain harmful ingredients like high levels of cadmium and certainly do not contain unlawful levels of harmful ingredients.

31.    Consumers, like Plaintiffs, want to know if a product they eat contains substances which are hazardous to their health. Consumers, like Plaintiffs, want to know if a product they eat contains high levels of substances which are declared to be unlawful carcinogens by the State of California. Defendant's nondisclosure of the high levels of cadmium in the Products is material because reasonable consumers would deem the presence of cadmium in the Products to be important

CROSNER LEGAL, P.C.

in determining whether to purchase the Products. Defendant has exclusive knowledge that the Products contain high levels of cadmium. The fact that Defendant's Products contain cadmium is not reasonably accessible to Plaintiffs and consumers. Consumers, like Plaintiffs, trust that the food products they purchase do not contain toxic heavy metals like cadmium which have been intentionally or negligently added to the products. Consumers, like Plaintiffs, trust that the food products they purchase do not contain toxic heavy metals at unlawful levels. Defendant has a duty to disclose the presence of cadmium in the Products because the fact is known to Defendant (that the Products contain cadmium), and the failure to disclose the cadmium in the Products is misleading. The high levels of dangerous substances such as cadmium in the Products implicates a health concern that is important to reasonable consumers when deciding to purchase Defendant's Products. Defendant has actively concealed the high levels of cadmium in the Products from Plaintiffs and putative class members.

32.    A failure to disclose a fact constitutes actionable conduct if the omission goes to the central function of the product. Here, the Products' central function is for people to safely consume the Products. Sunflower butter that contains harmful cadmium in extremely high levels does not serve its central function. Reasonable consumers, like Plaintiffs, would deem it important in determining whether to purchase the Products because Plaintiffs would not have purchased the Products had they known that harmful chemicals like cadmium were in the Products. That is, the omission of the cadmium content of the Products was material because a reasonable consumer would deem it important in determining how to act in the transaction at issue.

33.    A failure to disclose a fact constitutes actionable conduct if the omission causes an unreasonable safety hazard. Here, it is not reasonable to sell a product that consumers eat with illegally high levels of cadmium. As explained above, cadmium is a safety hazard because it causes several negative health effects

13

1    in humans including developmental and reproductive problems and an increased

2    risk of certain cancers.

3        34.    Defendant also made partial representations that the Products are safe

4    and healthy, including "Simple Ingredients," "Non-GMO Verified," "Certified

5    Gluten Free," "USDA Organic," "Free from the Top 8 Allergens," "Naturally

6    Savory & Satisfying," and "SunButter is . . . bursting with flavor & nutrition"

7    which create the net-impression that the Products did not contain potentially

8    harmful ingredients like cadmium. These partial disclosures are misleading

9    because the cadmium content of the Products was not disclosed.

10   **PLAINTIFFS AND THE PUTATIVE CLASS MEMBERS SUFFERED ECONOMIC INJURY**

11       35.    Plaintiffs and putative class members suffered economic injury as a

12   result of Defendant's actions. Plaintiffs and putative class members spent money

13   that, absent Defendant's actions, they would not have spent. With all the other

14   sunflower butter products on the market without high levels of cadmium, a

15   reasonable consumer would choose to purchase a product without high levels of

16   cadmium and not Defendant's Products. Plaintiffs and putative class members are

17   entitled to damages and restitution for the purchase price of the Products that were

18   defective, not merchantable, and not fit for their represented purpose. Consumers,

19   including Plaintiffs, would not have purchased Defendant's Products if they had

20   known the Products contain high levels of cadmium, a substance which has known

21   adverse health effects on humans. Defendant did not disclose that the Products

22   contain high levels of cadmium although it was required to do so.

23       36.    Making matters worse, sunflower butter products made by

24   Defendant's competitors, such as Once Again, do not contain high levels of

25   cadmium. Thus, there are safer alternatives that Plaintiffs and class members

26   would have purchased but were denied the benefit-of-the bargain as a result of

27   Defendant's concealment of the high levels of cadmium in the Products. Because

28   high levels of cadmium is a hazard to human health, Defendant has a continuing

14

CROSNER LEGAL, P.C.

duty to disclose the presence of high levels of cadmium in the Products to consumers. Defendant has failed to adequately disclose that the Products contain high levels of cadmium. Defendant's Products contain a hidden defect and Plaintiffs and putative class members suffered economic injury. Had Plaintiffs and putative class members known about the high levels of cadmium, they would not have purchased the Products or would have paid less for the Products.

37.    Accordingly, Plaintiffs bring this action on behalf of themselves and on behalf of other similarly situated consumers to halt the dissemination of Defendant's deceptive advertising message, correct the deceptive perception it has created in the minds of consumers, and obtain redress for those who have purchased the Products. As a consequence of Defendant's deceptive labeling and material omissions, Plaintiffs allege Defendant has violated and is violating California's Consumers Legal Remedies Act, Cal. Civ. Code § 1750 et seq. (the "CLRA"), California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 et seq. (the "UCL") and constitutes a breach of implied warranties.

**NO ADEQUATE REMEDY AT LAW**

38.    Plaintiffs and members of the class are entitled to equitable relief as no adequate remedy at law exists. The statutes of limitations for the causes of action pled herein vary. Class members who purchased the Products more than three years prior to the filing of the complaint will be barred from recovery if equitable relief were not permitted under the UCL.

39.    The scope of actionable misconduct under the unfair prong of the UCL is broader than the other causes of action asserted herein. It includes Defendant's overall unfair marketing scheme to promote and brand the Products, across a multitude of media platforms, including the Products' labels and packaging, over a long period of time, in order to gain an unfair advantage over competitor products. The UCL also creates a cause of action for violations of law (such as statutory or regulatory requirements and court orders related to similar

15

representations and omissions made on the type of products at issue). This is especially important here because Plaintiffs allege Defendant has committed "unlawful" acts and brings a claim for violation of the UCL's "unlawful prong." Specifically, Defendant has violated California's Safe Drinking Water and Toxic Enforcement Act of 1986, Cal. Health & Safety Code § 25249.5*, et seq.* No other causes of actions allow this claim to proceed, and thus, there is no adequate remedy at law for this specific violation of the UCL's unlawful prong. Plaintiffs' UCL unlawful prong claim does not rest on the same conduct as their other causes of action, and there is no adequate remedy at law for this specific unlawful claim. Plaintiffs and class members may also be entitled to restitution under the UCL, while not entitled to damages under other causes of action asserted herein (e.g., the CLRA is limited to certain types of plaintiffs (an individual who seeks or acquires, by purchase or lease, any goods or services for personal, family, or household purposes) and other statutorily enumerated conduct).

40.    Injunctive relief is appropriate on behalf of Plaintiffs and members of the class because Defendant continues to omit material facts about the Products. Injunctive relief is necessary to prevent Defendant from continuing to engage in the unfair, fraudulent, and/or unlawful conduct described herein and to prevent future harm—none of which can be achieved through available legal remedies (such as monetary damages to compensate past harm). Injunctive relief, in the form of affirmative disclosures or halting the sale of unlawful sold products is necessary to dispel the public misperception about the Products that has resulted from years of Defendant's unfair, fraudulent, and unlawful marketing efforts. Such disclosures would include, but are not limited to, publicly disseminated statements that the Products contain high levels of cadmium; and/or requiring prominent qualifications and/or disclaimers on the Products' front label concerning the Products' true nature. An injunction requiring affirmative disclosures to dispel the public's misperception, and prevent the ongoing deception and repeat purchases,

1  is also not available through a legal remedy (such as monetary damages). In
2  addition, Plaintiffs are currently unable to accurately quantify the damages caused
3  by Defendant's future harm, because discovery and Plaintiffs' investigation have
4  not yet completed, rendering injunctive relief necessary. Further, a public
5  injunction is available under the UCL, and damages will not adequately benefit
6  the general public in a manner equivalent to an injunction.

7      41.    It is premature to determine whether an adequate remedy at law
8  exists. This is an initial pleading and discovery has not yet commenced and/or is
9  at its initial stages. No class has been certified yet. No expert discovery has
10  commenced and/or completed. The completion of fact/non-expert and expert
11  discovery, as well as the certification of this case as a class action, are necessary
12  to finalize and determine the adequacy and availability of all remedies, including
13  legal and equitable, for Plaintiffs' individual claims and any certified class or
14  subclass. Plaintiffs therefore reserves their right to amend this complaint and/or
15  assert additional facts that demonstrate this Court's jurisdiction to order equitable
16  remedies where no adequate legal remedies are available for either Plaintiffs
17  and/or any certified class or subclass. Such proof, to the extent necessary, will be
18  presented prior to the trial of any equitable claims for relief and/or the entry of an
19  order granting equitable relief.

20                    **CLASS ACTION ALLEGATIONS**

21      42.    Plaintiffs bring this action as a class action pursuant to Federal Rules
22  of Civil Procedure 23(b)(2) and 23(b)(3) on behalf of the following Classes:

23      **California Class:** All persons who purchased the Products for personal
24      and household use and not for resale in California within the applicable
25      statute of limitations and until the date class notice is disseminated.

26      **New York Class:** All persons who purchased the Products for personal
27      and household use and not for resale in New York within the applicable
28      statute of limitations and until the date class notice is disseminated.

CROSNER LEGAL. P.C.

17

CLASS ACTION COMPLAINT

CROSNER LEGAL, P.C.

43.    Excluded from the class are: (i) Defendant and its officers, directors, and employees; (ii) any person who files a valid and timely request for exclusion; and (iii) judicial officers and their immediate family members and associated court staff assigned to the case.

44.    Plaintiffs reserve the right to amend or otherwise alter the class definition presented to the Court at the appropriate time, or to propose or eliminate sub-classes, in response to facts learned through discovery, legal arguments advanced by Defendant, or otherwise.

45.    The Class is appropriate for certification because Plaintiffs can prove the elements of the claims on a classwide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

46.    <u>Numerosity</u>: Class Members are so numerous that joinder of all members is impracticable. Plaintiffs believe that there are thousands of consumers who are Class Members described above who have been damaged by Defendant's deceptive and misleading practices.

47.    <u>Commonality</u>: There is a well-defined community of interest in the common questions of law and fact affecting all Class Members. The questions of law and fact common to the Class Members which predominate over any questions which may affect individual Class Members include, but are not limited to:

a.    Whether Defendant is responsible for the conduct alleged herein which was uniformly directed at all consumers who purchased the Products;

b.    Whether Defendant's misconduct set forth in this Complaint demonstrates that Defendant engaged in unfair, fraudulent, or unlawful business practices with respect to the advertising, marketing, and sale of the Products;

c.    Whether Defendant made material omissions concerning the Products that were likely to deceive the public;

d.    Whether Plaintiffs and the Class are entitled to injunctive relief;

e.    Whether Plaintiffs and the Class are entitled to money damages

18

and/or restitution under the same causes of action as the other Class Members.

48.  Typicality: Plaintiffs are members of the Class that Plaintiffs seek to represent. Plaintiffs' claims are typical of the claims of each Class Member in that every member of the Class was susceptible to the same deceptive, misleading conduct and purchased the Products. Plaintiffs are entitled to relief under the same causes of action as the other Class Members.

49.  Adequacy: Plaintiffs are adequate Class representatives because Plaintiffs' interests do not conflict with the interests of the Class Members Plaintiffs seek to represent; the consumer fraud claims are common to all other members of the Class, and Plaintiffs have a strong interest in vindicating the rights of the class; Plaintiffs have retained counsel competent and experienced in complex class action litigation and Plaintiffs intend to vigorously prosecute this action. Plaintiffs have no interests which conflict with those of the Class. The Class Members' interests will be fairly and adequately protected by Plaintiffs and proposed Class Counsel. Defendant has acted in a manner generally applicable to the Class, making relief appropriate with respect to Plaintiffs and the Class Members. The prosecution of separate actions by individual Class Members would create a risk of inconsistent and varying adjudications.

50.  The Class is properly brought and should be maintained as a class action because a class action is superior to traditional litigation of this controversy. A class action is superior to the other available methods for the fair and efficient adjudication of this controversy because:

a.    The joinder of hundreds of individual Class Members is impracticable, cumbersome, unduly burdensome, and a waste of judicial and/or litigation resources;

b.    The individual claims of the Class Members may be relatively modest compared with the expense of litigating the claim, thereby making it impracticable, unduly burdensome, and expensive to justify individual actions;

19

c.    When Defendant's liability has been adjudicated, all Class Members' claims can be determined by the Court and administered efficiently in a manner far less burdensome and expensive than if it were attempted through filing, discovery, and trial of all individual cases;

d.    This class action will promote orderly, efficient, expeditious, and appropriate adjudication and administration of Class claims;

e.    Plaintiffs know of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action;

f.    This class action will assure uniformity of decisions among Class Members;

g.    The Class is readily definable and prosecution of this action as a class action will eliminate the possibility of repetitious litigation; and

h.    Class Members' interests in individually controlling the prosecution of separate actions is outweighed by their interest in efficient resolution by single class action;

51.    Additionally or in the alternative, the Class also may be certified because Defendant has acted or refused to act on grounds generally applicable to the Class thereby making final declaratory and/or injunctive relief with respect to the members of the Class as a whole, appropriate.

52.    Plaintiffs seek preliminary and permanent injunctive and equitable relief on behalf of the Class, on grounds generally applicable to the Class, to enjoin and prevent Defendant from engaging in the acts described, and to require Defendant to provide full restitution to Plaintiffs and Class members.

53.    Unless the Class is certified, Defendant will retain monies that were taken from Plaintiffs and Class members as a result of Defendant's wrongful conduct. Unless a classwide injunction is issued, Defendant will continue to commit the violations alleged and the members of the Class and the general public will continue to be misled.

CLASS ACTION COMPLAINT

CROSNER LEGAL, P.C.

**FIRST CLAIM FOR RELIEF**

**Violation of California's Consumers Legal Remedies Act**

**Cal. Civ. Code § 1750** *et seq.*

*(California Class)*

54.    Plaintiffs reallege and incorporate by reference all allegations contained in this complaint, as though fully set forth herein.

55.    Plaintiff Boyd brings this claim under the CLRA individually and on behalf of the California Class against Defendant.

56.    At all times relevant hereto, Plaintiffs and the members of the Class were "consumer[s]," as defined in California Civil Code section 1761(d).

57.    At all relevant times, Defendant constituted a "person," as defined in California Civil Code section 1761(c).

58.    At all relevant times, the Products manufactured, marketed, advertised, and sold by Defendant constituted "goods," as defined in California Civil Code section 1761(a).

59.    The purchases of the Products by Plaintiffs and the members of the Class were and are "transactions" within the meaning of California Civil Code section 1761(e).

60.    Defendant disseminated, or caused to be disseminated, through its advertising, false and misleading representations, including the Products' labeling that they do not contain hazardous substances such as high levels of cadmium. Defendant fails to disclose that the Products contain high levels of cadmium. This is a material omission as reasonable consumer would find the fact that the Products contain high levels of cadmium to be important to their decision in purchasing the Products. Defendant's representations violate the CLRA in the following ways:

a)    Defendant represented that the Products have characteristics, ingredients, uses, and benefits which they do not have (Cal. Civ. Code § 1770(a)(5));

21

CROSNER LEGAL, P.C.

b)      Defendant represented that the Products are of a particular standard, quality, or grade, which they are not (Cal. Civ. Code § 1770(a)(7));

c)      Defendant advertised the Products with an intent not to sell the Products as advertised (Cal. Civ. Code § 1770(a)(9)); and

d)      Defendant represented that the subject of a transaction has been supplied in accordance with a previous representation when it has not (Cal. Civ. Code § 1770(a)(16)).

61.    Defendant violated the CLRA because the Products contain high levels of cadmium. Defendant knew or should have known that consumers would want to know that the Products contain high levels of cadmium. Defendant had a duty to disclose that the Products contain high levels of cadmium. Based on the statutory text, legislative history (which includes the National Consumer Act), the judicial decisions and statutes that existed when the CLRA was enacted, the subsequent case law, and the many amendments to the CLRA from 1975 through 2016, failures to disclose material facts are actionable under the CLRA. In particular, subdivision (a)(5), (7), and (9) of Civil Code section 1770 proscribe material omissions. Defendant's labeling of the Products also created the net-impression that the Products do not contain hazardous substances such as cadmium. Defendant had exclusive knowledge of the material fact that the Products contain high levels of cadmium, and Defendant failed to disclose this fact. Defendant actively concealed this material fact. The fact that the Products contain high levels of cadmium is material to consumers because reasonable consumers would deem the existence of cadmium in a product they eat important in determining whether to buy the Products.

62.    Defendant's actions as described herein were done with conscious disregard of Plaintiffs and the Class members' rights and were wanton and malicious.

63.    Defendant's wrongful business practices constituted, and constitute,

1   a continuing course of conduct in violation of the CLRA, since Defendant is still
2   representing that the Products have characteristics which they do not have.

3        64.    Pursuant to California Civil Code section 1782(d), Plaintiff Boyd and
4   the California Class seek an order enjoining Defendant from engaging in the
5   methods, acts, and practices alleged herein.

6        65.    Pursuant to California Civil Code section 1782, Plaintiffs notified
7   Defendant in writing by certified mail of the alleged violations of the CLRA and
8   demanded that Defendant rectify the problems associated with the actions detailed
9   above and give notice to all affected consumers of their intent to so act. If
10  Defendant fails to rectify or agree to rectify the problems associated with the
11  actions detailed herein and give notice to all affected consumers within 30 days of
12  the date of written notice pursuant to section 1782 of the CLRA, Plaintiffs will
13  amend this complaint to seek actual, punitive, and statutory damages, as
14  appropriate.

15  **SECOND CLAIM FOR RELIEF**
16  **Violation of California's Unfair Competition Law**
17  **Cal. Bus. & Prof. Code § 17200 *et seq.***
18  ***(California Class)***

19       66.    Plaintiffs reallege and incorporate by reference all allegations
20  contained in this complaint, as though fully set forth herein.

21       67.    Plaintiff Boyd brings this claim under the UCL individually and on
22  behalf of the California Class against Defendant.

23       68.    The UCL prohibits any "unlawful," "fraudulent," or "unfair" business
24  act or practice and any false or misleading advertising.

25       69.    Defendant committed unlawful business acts or practices by making
26  the representations and omitted material facts (which constitutes advertising
27  within the meaning of California Business & Professions Code section 17200), as
28  set forth more fully herein, and violating California Civil Code sections 1573,

CROSNER LEGAL. P.C.

23

1709, 1711, 1770(a)(5), (7), (9) and (16), California Business & Professions Code section 17500 *et seq.*, California common law breach of implied warranties, and California's Safe Drinking Water and Toxic Enforcement Act of 1986 ("Proposition 65"), Cal. Health & Safety Code § 25249.5*, et seq.* Plaintiffs, individually and on behalf of the other Class members, reserve the right to allege other violations of law, which constitute other unlawful business acts or practices. Such conduct is ongoing and continues to this date.

70.    Defendant committed "unfair" business acts or practices by: (1) engaging in conduct where the utility of such conduct is outweighed by the harm to Plaintiffs and the members of the a Class; (2) engaging in conduct that is immoral, unethical, oppressive, unscrupulous, or substantially injurious to Plaintiffs and the members of the Class; and (3) engaging in conduct that undermines or violates the intent of the consumer protection laws alleged herein. There is no societal benefit from deceptive advertising. Plaintiffs and the other Class members paid for Products that were not as advertised by Defendant. Further, Defendant failed to disclose a material fact (that the Products contain high levels of cadmium) of which it had exclusive knowledge. While Plaintiffs and the other Class members were harmed, Defendant was unjustly enriched by its false misrepresentations and material omissions. As a result, Defendant's conduct is "unfair," as it offended an established public policy. There were reasonably available alternatives to further Defendant's legitimate business interests, other than the conduct described herein. For example, Defendant's competitors sell sunflower butter products that do not contain high levels of cadmium.

71.    Defendant committed "fraudulent" business acts or practices by making the representations of material fact regarding the Products set forth herein. Defendant's business practices as alleged are "fraudulent" under the UCL because they are likely to deceive customers into believing the Products do not contain high levels of cadmium.

CLASS ACTION COMPLAINT

72.     Plaintiffs and the other members of the Class have in fact been deceived as a result of their reliance on Defendant's material representations and omissions. This reliance has caused harm to Plaintiffs and the other members of the Class, each of whom purchased Defendant's Products. Plaintiffs and the other Class members have suffered injury in fact and lost money as a result of purchasing the Products and Defendant's unlawful, unfair, and fraudulent practices.

73.     Defendant's wrongful business practices and violations of the UCL are ongoing.

74.     Plaintiffs and the Class seek pre-judgment interest as a direct and proximate result of Defendant's unfair and fraudulent business conduct. The amount on which interest is to be calculated is a sum certain and capable of calculation, and Plaintiffs and the Class seek interest in an amount according to proof.

75.     Unless restrained and enjoined, Defendant will continue to engage in the above-described conduct. Accordingly, injunctive relief is appropriate. Pursuant to California Business & Professions Code section 17203, Plaintiff Boyd and the California Class seek (1) restitution from Defendant of all money obtained from Plaintiffs and the other Class members as a result of unfair competition; (2) an injunction prohibiting Defendant from continuing such practices in the State of California that do not comply with California law; and (3) all other relief this Court deems appropriate, consistent with California Business & Professions Code section 17203.

### THIRD CLAIM FOR RELIEF

### Breach of Implied Warranties

### *(California and New York Classes)*

76.     Plaintiffs reallege and incorporate by reference all allegations contained in this complaint, as though fully set forth herein.

77.     Plaintiffs bring this claim individually and on behalf of the Classes

25

1    against Defendant.

2        78.   Defendant was at all relevant times the manufacturer, distributor,

3    and/or warrantor of the Products. Defendant knew or had reason to know of the

4    specific use for which its Products were purchased.

5        79.   Defendant, through the acts and omissions set forth herein, in the sale,

6    marketing, and promotion of the Products made implied representations to

7    Plaintiffs and the Class that the Products were fit for the particular purpose of

8    consumption. However, the Products are hazardous to consume. Further,

9    Defendant cannot legally sell the products in California without a Proposition 65

10   disclosure on the labels, and thus, by definition they are not fit for the particular

11   purpose of consumption. At the time the Products were sold, Defendant knew or

12   should have known that Plaintiffs and members of the Class would rely on

13   Defendant's skill and judgment regarding the safety and composition of the

14   Products. Because the Products contain high levels of cadmium, they are not of

15   the same quality as those generally accepted in the trade and were not fit for the

16   ordinary purposes for which the Products are used (i.e., consumption).

17       80.   By advertising and selling the Products at issue, Defendant, a

18   merchant of goods, made promises and affirmations of fact that the Products are

19   merchantable and conform to the promises or affirmations of fact made on the

20   Product's packaging and labeling, and through its marketing and advertising, as

21   described herein. This labeling and advertising, combined with the implied

22   warranty of merchantability, constitute warranties that became part of the basis of

23   the bargain between Plaintiffs and members of the Class and Defendant.

24   Defendant's labeling and advertising, combined with the implied warranty of

25   merchantability, constitute a warranty that the Products do not contain hazardous

26   substances such as high levels of cadmium.

27       81.   In reliance on Defendant's skill and judgment and the implied

28   warranties of fitness for this purpose and merchantability, Plaintiffs and members

CROSNER LEGAL, P.C.

CLASS ACTION COMPLAINT

of the Class purchased the Products for use to consume. Defendant knew that the Products would be purchased and used without further testing by Plaintiffs and Class members.

82.    Consumers are the intended beneficiaries of the implied warranty as they are the ones Defendant made the Products for and specifically marketed the Products to consumers. Defendant breached the implied warranty of merchantability. Because the Products contain high levels of cadmium, they are not fit for ordinary use (i.e., consumption).

83.    As a direct and proximate result of Defendant's breach of warranty, Plaintiffs and members of the Class were harmed in the amount of the purchase price they paid for the Products. Further, Plaintiffs and members of the Class have suffered and continue to suffer economic losses and other damages including, but not limited to, the amounts paid for the Product, and any interest that would have accrued on those monies, in an amount to be proven at trial. Accordingly, Plaintiffs seek a monetary award for breach of warranty in the form of damages, restitution, and/or disgorgement of ill-gotten gains to compensate Plaintiffs and the Class for the loss of that money, as well as injunctive relief to enjoin Defendant's misconduct to prevent ongoing and future harm that will result.

84.    Plaintiffs seek punitive damages pursuant to this cause of action for breach of warranty on behalf of Plaintiffs and the Class. Defendant's unfair, fraudulent, and unlawful conduct described herein constitutes malicious, oppressive, and/or fraudulent conduct warranting an award of punitive damages as permitted by law. Defendant's misconduct is malicious as Defendant acted with the intent to cause Plaintiffs and consumers to pay for Products that they were not, in fact, receiving. Defendant willfully and knowingly disregarded the rights of Plaintiffs and consumers as Defendant was aware of the probable dangerous consequences of its conduct and deliberately failed to avoid misleading consumers, including Plaintiffs. Defendant's misconduct is oppressive.

27

CROSNER LEGAL, P.C.

CROSNER LEGAL, P.C.

1    Reasonable consumers would look down upon it and/or otherwise would despise

2    such misconduct. This misconduct subjected Plaintiffs and consumers to cruel and

3    unjust hardship in knowing disregard of their rights. Defendant's misconduct is

4    fraudulent as Defendant, at all relevant times, intentionally misrepresented and/or

5    concealed material facts with the intent to deceive Plaintiffs and consumers. The

6    wrongful conduct constituting malice, oppression, and/or fraud was committed,

7    authorized, adopted, approved, and/or ratified by officers, directors, and/or

8    managing agents of Defendant.

9                            **FOURTH CLAIM FOR RELIEF**

10                  **Violation of New York Gen. Bus. Law § 349**

11                              ***(New York Class)***

12        85.    Plaintiffs reallege and incorporate by reference all allegations

13    contained in this complaint, as though fully set forth herein.

14        86.    Plaintiff Rabinowitz brings this claim individually and on behalf of

15    the New York Class against Defendant.

16        87.    New York General Business Law Section 349 ("GBL §349") declares

17    unlawful "[d]eceptive acts or practices in the conduct of any business, trade, or

18    commerce or in the furnishing of any service in this state."

19        88.    The conduct of Defendant alleged herein constitutes recurring,

20    "unlawful" deceptive acts and practices in violation of GBL §349, and as such,

21    Plaintiff Rabinowitz and the New York Class seek monetary damages against

22    Defendant, enjoining it from inaccurately describing, labeling, marketing, and

23    promoting the Products and from charging consumers moneys in the future.

24        89.    Defendant misleadingly, inaccurately, and deceptively advertised and

25    marketed the Products to consumers. By misrepresenting the true contents of the

26    Products and failing to disclose the Products contain high levels of cadmium,

27    Defendant's marketing and labeling misleads reasonable consumers.

28        90.    Defendant had exclusive knowledge of the cadmium levels in the

Products.

91.    Defendant's omissions were material because consumers are concerned with the quality of food that they purchase, and the ingredients contained therein.

92.    Defendant's improper consumer-oriented conduct—including Defendant's omissions regarding the presence of cadmium in the Products—is misleading in a material way in that, *inter alia*, it induced Plaintiff Rabinowitz and the New York Class to purchase Defendant's Products when they otherwise would not have.

93.    Defendant's deceptive and misleading practices constitute a deceptive act and practice in the conduct of business in violation of New York General Business Law §349(a) and Plaintiffs have been damaged thereby.

94.    As a result of Defendant's recurring, unlawful deceptive acts and practices, Plaintiff Rabinowitz and the New York Class seek monetary, statutory, compensatory, treble and punitive damages, restitution, and disgorgement of all moneys obtained by means of Defendant's unlawful conduct, interest, and attorneys' fees and costs.

## FIFTH CLAIM FOR RELIEF

### Violation of New York Gen. Bus. Law § 350

### *(New York Class)*

95.    Plaintiffs reallege and incorporate by reference all allegations contained in this complaint, as though fully set forth herein.

96.    Plaintiff Rabinowitz brings this claim individually and on behalf of the New York Class against Defendant.

97.    N.Y. Gen. Bus. Law §350 provides, in part, as follows: False advertising in the conduct of any business, trade or commerce or in the furnishing of any service in this state is hereby declared unlawful.

98.    N.Y. Gen. Bus. Law §350-a(1) provides, in part, as follows: "The

CLASS ACTION COMPLAINT

CROSNER LEGAL. P.C.

term 'false advertising' means advertising, including labeling, of a commodity, or of the kind, character, terms or conditions of any employment opportunity if such advertising is misleading in a material respect. In determining whether any advertising is misleading, there shall be taken into account (among other things) not only representations made by statement, word, design, device, sound or any combination thereof, but also the extent to which the advertising fails to reveal facts material in the light of such representations with respect to the commodity or employment to which the advertising relates under the conditions proscribed in said advertisement, or under such conditions as are customary or usual..."

99. Defendant's labeling and advertisements contain untrue and materially misleading statements concerning Defendant's Products by failing to disclose the presence of cadmium in the Products, thereby misleading reasonable consumers.

100. Defendant had exclusive knowledge of the cadmium levels in the Products.

101. Defendant's omissions were material because consumers are concerned with the quality of food that they purchase, and the ingredients contained therein.

102. Defendant's advertising and the Products' labeling induced Plaintiffs to buy Defendant's Products. Plaintiff Rabinowitz and the New York Class have been injured as they paid for the Products based on Defendant's failure to disclose the presence or risk of the presence of cadmium in the Products.

103. Defendant's omissions have been consistent throughout the Class Period as Defendant has never included a disclosure that the Products contain cadmium.

104. As a result of Defendant's recurring, "unlawful" deceptive acts and practices, Plaintiff Rabinowitz and the New York Class seek monetary, statutory, compensatory, treble and punitive damages, restitution, and disgorgement of all

moneys obtained by means of Defendant's unlawful conduct, interest, and attorneys' fees and costs.

### REQUEST FOR RELIEF

105. Plaintiffs, on behalf of themselves and all others similarly situated, request for relief pursuant to each claim set forth in this complaint, as follows:

a. Declaring that this action is a proper class action, certifying the Class as requested herein, designating Plaintiffs as the Class Representatives and appointing the undersigned counsel as Class Counsel;

b. Ordering restitution and disgorgement of all profits and unjust enrichment that Defendant obtained from Plaintiffs and the Class members as a result of Defendant's unlawful, unfair, and fraudulent business practices;

c. Ordering injunctive relief as permitted by law or equity, including enjoining Defendant from continuing the unlawful practices as set forth herein, and ordering Defendant to engage in a corrective advertising campaign;

d. Ordering damages for Plaintiffs and the Class;

e. Ordering Defendant to pay attorneys' fees and litigation costs to Plaintiffs and the other members of the Class;

f. Ordering Defendant to pay both pre- and post-judgment interest on any amounts awarded; and

g. Ordering such other and further relief as may be just and proper.

### JURY DEMAND

Plaintiffs hereby demand a trial by jury of all claims in this Complaint so triable.

Dated: September 13, 2024          CROSNER LEGAL, P.C.

                                  By:    */s/  Lilach H. Klein*
                                         LILACH H. KLEIN

31

CROSNER LEGAL, P.C.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

9440 Santa Monica Blvd. Suite 301
Beverly Hills, CA 90210
Tel: (866) 276-7637
Fax: (310) 510-6429
lilach@crosnerlegal.com

*Attorneys for Plaintiffs and the Proposed Class*

CROSNER LEGAL. P.C.

CLASS ACTION COMPLAINT

**<u>Venue Affidavit</u>**

I, Lilach Klein, declare as follows:

1.    I am an attorney duly licensed to practice before all of the courts of the State of California. I am one of the counsel of record for Plaintiffs.

2.    This declaration is made pursuant to § 1780(d) of the California Consumers Legal Remedies Act.

3.    Defendant SunButter, LLC has done, and is doing business in California, including in this District. Such business includes the marketing, promotion, distribution, and sale of the SunButter No Sugar Added Sunflower Butter and SunButter Organic Sunflower Butter products.

4.    Plaintiff Boyd purchased one of the products at issue in this District.

I declare under penalty of perjury under the laws of the State of California and the United States that the foregoing is true and correct.

Executed on September 13, 2024 in Sacramento, California.


CROSNER LEGAL, P.C.


By:       /s/ Lilach H. Klein
          LILACH H. KLEIN

9440 Santa Monica Blvd. Suite 301
Beverly Hills, CA 90210
Tel: (866) 276-7637
Fax: (310) 510-6429
lilach@crosnerlegal.com

*Attorneys for Plaintiffs and the Proposed Class*

CROSNER LEGAL, P.C.

33