UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 24-7873-GW-BFMx | Date | January 10, 2025 |
|---|---|---|---|
| Title | *John Boyd, et al. v. SunButter, LLC* | | |

Present: The Honorable   GEORGE H. WU, UNITED STATES DISTRICT JUDGE

| Javier Gonzalez | None Present | |
|---|---|---|
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| None Present | None Present |

**PROCEEDINGS:**   **IN CHAMBERS - TENTATIVE RULING ON DEFENDANT SUNBUTTER, LLC'S MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED CLASS ACTION COMPLAINT [18]**

Attached hereto is the Court's Tentative Ruling on Defendant's Motion [18] set for hearing on January 13, 2025 at 8:30 a.m.

:

Initials of Preparer   JG

***John Boyd et al v. SunButter, LLC***; Case No. 2:24-cv-07873-GW-(BFMx)
Tentative Ruling on Motion to Dismiss


Before the Court is Defendant's Motion to Dismiss (the "Motion").  *See* Motion, Docket No. 18.  The Court has considered the Motion, Plaintiff's opposition brief ("Opp.," Docket No. 21), and Defendant's reply brief ("Reply," Docket No. 22).  For the reasons stated herein, the Court would grant the motion in part with leave to amend and deny the motion in part.

## I.       Background

John Boyd and Jana Rubinowitz ("Plaintiffs") on behalf of themselves and all others similarly situated brought suit against Sunbutter, LLC ("Defendant") on September 13, 2024, alleging violations of California's Consumers Legal Remedies Act ("CLRA") (Cal. Civ. Code § 1750 et seq.), California's Unfair Competition Law ("UCL") (Cal. Bus. & Prof. Code § 17200 et seq.), and New York's Gen. Bus. Law §§ 349-350 ("GBL")[1], and a breach of implied warranties. *See* Complaint, Docket No. 1.  After receiving Defendant's first Motion to Dismiss, *see* Docket No. 13, Plaintiffs amended their complaint on November 19, 2024, alleging the same violations. *See* First Amended Complaint ("FAC"), Docket No. 16.

The Court's review of the FAC reveals the following allegations.  Defendant sells two sunflower butter products called "SunButter No Sugar Added Sunflower Butter" and "SunButter Organic Sunflower Butter" (the "Products").  *Id.* ¶ 1.  On the Products' labels, Defendant makes statements such as: "Simple Ingredients," "Free from the Top 8 Allergens," "Naturally Savory & Satisfying," "SunButter is . . . bursting with flavor & nutrition," "Non-GMO," and "Gluten-Free" (collectively, "the Representations").  *Id.*  But, Defendant does not disclose the purportedly unsafe and unlawful levels of cadmium in the Products.  *Id.* ¶ 2.  Plaintiffs find this misleading because on August 15, 2024, the website ConsumerLabs.com published results of tests that had been performed on various sunflower butter products.  The tests concluded that Defendant's SunButter No Sugar Added Sunflower Butter product tested positive for 17.5 micrograms of cadmium per serving and that Defendant's SunButter Organic Sunflower Butter product tested positive for 20.8

---

[1] Defendant has not argued that the Court lacks personal jurisdiction over the New York claims and thus waives the right to dismiss them for that reason.  *See In re Cathode Ray Tube (CRT) Antitrust Litig.*, 27 F. Supp. 3d 1002, 1008 (N.D. Cal. 2014) ("As a general rule, if a party files a responsive pleading or makes a Rule 12 motion but does not raise personal jurisdiction as a defense, the party waives the right to raise personal jurisdiction later." (citing Fed. R. Civ. P. 12(h) and *Parker v. United States*, 110 F.3d 678, 682 (9th Cir.1997)).

micrograms of cadmium per serving.  Plaintiffs allege that these totals are well above the 4.1 microgram per serving line, above which California's Proposition 65 (Health & Safety Code, § 25249.5 *et seq*.) demands that sellers must place a warning label on their product, well above the U.S. Agency for Toxic Substances and Disease Registry's ("ATSDR") chronic oral minimal risk level of 5.4 micrograms per day (for a 120 pound person), and above the U.S. Food and Drug Administration's ("FDA") oral toxicological reference value for characterizing potential health concerns from dietary exposure to cadmium of 13.5 micrograms per day (for a 120 pound person). *Id.* ¶¶ 3, 30, 31.  Cadmium is a heavy metal that the Department of Health and Human Services has determined is a human carcinogen; the Center for Disease Control ("CDC") has recognized that there is "no safe level of exposure to a carcinogen."  *Id.* ¶ 24 (citing pages on the CDC's website).  Cadmium exposure has been linked with kidney disease, lung damage, fragile bones, and severe stomach irritation.  *Id.* ¶¶ 26-27.

Plaintiff John Boyd, a resident of California, purchased the SunButter No Sugar Added Sunflower Butter product several times in California in 2023, and Plaintiff Jana Rabinowitz, a resident of New York, purchased the SunButter Organic Sunflower Butter product twice in New York in 2024.  *Id.* ¶¶ 9-10.  Plaintiffs had read the labeling on the Products and purchased them on the assumption that they did not contain harmful substances like cadmium.  *Id.* ¶ 33.  Plaintiffs would desire to purchase the Products again if they did not contain high levels of cadmium.  *Id.* ¶ 34.  Plaintiffs do not allege any physical injury from consuming the Products.  *Id.* ¶ 33.  John Boyd seeks to represent "All persons who purchased the Products for personal and household use and not for resale in California within the applicable statute of limitations and until the date class notice is disseminated," and Jana Rabinowitz seeks to represent "All persons who purchased the Products for personal and household use and not for resale in New York within the applicable statute of limitations and until the date class notice is disseminated."  *Id.* ¶ 48.

Defendant has brought a Motion to Dismiss the FAC, which is currently before the Court. *See* Docket No. 18.

## II.    Legal Standard

### A.  Standing

Federal Rule of Civil Procedure 12(b)(1) authorizes a motion to dismiss for lack of subject matter jurisdiction.  *See* Fed. R. Civ. P. 12(b)(1).  Dismissal pursuant to Rule 12(b)(1) is appropriate when either the complaint or evidence extrinsic to the complaint demonstrates that the

court lacks subject matter jurisdiction over the action. *Roberts v. Corrothers*, 812 F.2d 1173, 1177 (9th Cir. 1987).  The issue of Article III standing is jurisdictional and is therefore "properly raised in a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1)." *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000).  To meet his burden of establishing standing, a plaintiff must show he has "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016).  And where a plaintiff seeks injunctive relief, he must also demonstrate a "real and immediate threat of repeated injury." *Chapman v. Pier 1 Imports (U.S.) Inc.*, 631 F.3d 939, 946 (9th Cir. 2011) (internal citation and quotation marks omitted).  If a plaintiff fails to establish standing or any other aspect of subject matter jurisdiction, "the court, on having the defect called to its attention or on discovering the same, must dismiss the case, unless the defect be corrected by amendment." *Tosco Corp. v. Communities for a Better Env't*, 236 F.3d 495, 499 (9th Cir. 2001) (citation and quotations omitted), *abrogated on other grounds by Hertz Corp. v. Friend*, 559 U.S. 77 (2010).

### B.  Failure to State a Claim

Under Federal Rule of Civil Procedure 12(b)(6), a party may bring a motion to dismiss for failure to state a claim upon which relief can be granted.  Rule 12(b)(6) must be read in conjunction with Federal Rule of Civil Procedure 8(a), which requires a "short and plain statement of the claim showing that a pleader is entitled to relief," in order to give the defendant "fair notice of what the claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

Under Rule 12(b)(6), the court must: (1) construe the complaint in the light most favorable to Plaintiff, and (2) accept all well-pleaded factual allegations as true, as well as all reasonable inferences to be drawn from them. *See Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir.), *opinion amended on denial of reh'g*, 275 F.3d 1187 (9th Cir. 2001); *Pareto v. F.D.I.C.*, 139 F.3d 696, 699 (9th Cir. 1998).  In its consideration of the motion, the court is limited to the allegations on the face of the complaint (including documents attached thereto), matters which are properly judicially noticeable and "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading." *Branch v. Tunnell*, 14 F.3d 449, 453-54 (9th Cir. 1994), *overruled on other grounds by Galbraith v. Cnty. of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002); *Lee v. City of Los Angeles*, 250 F.3d 668,

688-89 (9th Cir. 2001).  Dismissal pursuant to Rule 12(b)(6) is proper only where there is either a "lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory."  *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990); *Johnson v. Riverside Healthcare Sys., LP*, 534 F.3d 1116, 1121-22 (9th Cir. 2008); *see also Twombly*, 550 U.S. at 561-63 (dismissal for failure to state a claim does not require the appearance, beyond a doubt, that the plaintiff can prove "no set of facts" in support of its claim that would entitle it to relief).

In addition, fraudulent misrepresentation claims must satisfy the heightened pleading standard of Federal Rule of Civil Procedure 9(b).  *Zeller v. Optavia, LLC*, No. 22-cv-434-DMS-MSB, 2022 WL 17858032, at *12 (S.D. Cal. Dec. 22, 2022).  Rule 9(b) requires a plaintiff alleging claims sounding in fraud to "state with particularity the circumstances constituting fraud or mistake," Fed. R. Civ. P. 9(b), including "an account of the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations."  *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007); *see also In re Google Assistant Priv. Litig.*, 546 F. Supp. 3d 945, 955 (N.D. Cal. 2021) (a claim of fraud "must be accompanied by the who, what, when, where, and how of the misconduct charged") (internal quotation marks omitted).

Under Federal Rule of Civil Procedure 15(a)(2), federal courts are instructed to "freely give leave [to amend] when justice so requires."  A district court, however, may in its discretion deny leave to amend "due to 'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment.'" *Leadsinger, Inc. v. BMG Music Pub.*, 512 F.3d 522, 532 (9th Cir. 2008) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

## III.  **Discussion**

Defendant seeks dismissal, arguing that Plaintiffs lack standing, reasonable consumers are not deceived by the Defendant's representations, and Plaintiffs' claim for breach of implied warranties fails.

### A.  **Standing**

"To establish standing, a '[p]laintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision.'"  *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 597

4

(9th Cir. 2020) (quoting *Spokeo, Inc.*, 578 U.S. at 338).

The Ninth Circuit recognizes a plaintiff can successfully plead an economic injury when she alleges "she paid more for a product than she otherwise would have due to a defendant's false representations about the product." *McGee v. S-L Snacks Nat'l*, 982 F.3d 700, 706 (9th Cir. 2020). "Under California law, the economic injury of paying a premium for a falsely advertised product is sufficient harm to maintain a cause of action." *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 965 (9th Cir. 2018). "Thus, a consumer's allegation that 'she would not have bought the product but for the misrepresentation ... is sufficient to allege causation ... [and] to allege economic injury.'" *Id.* at 965-66 (quoting *Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 330 (2011)). "To properly plead an economic injury, a consumer must allege that she was exposed to false information about the product purchased, which caused the product to be sold at a higher price, and that she would not have purchased the goods in question absent this misrepresentation." *Id.* at 966 (quotation marks omitted).

Here, Plaintiffs allege that they purchased the Products multiple times on the assumption that they did not contain harmful substances like cadmium. *See* FAC ¶ 33. Plaintiffs further allege that they would desire to purchase the Products again if they did not contain high levels of cadmium. *Id.* ¶ 34.

First, Defendant argues that Plaintiffs do not and cannot plausibly plead the reliability or accuracy of the testing of the ConsumerLabs article. *See* Motion at 13-15. At this stage, the Court must accept as true the allegations in the complaint and draw all reasonable inferences from those allegations in favor of the plaintiff, *see Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 889 (1990), and Plaintiffs' allegations here regarding the testing conducted by ConsumerLabs.com allow the Court to plausibly infer that the Products purchased by Plaintiffs during the Class Period contained unsafe levels of cadmium. *See Rodriguez v. Mondelez Glob. LLC*, 703 F. Supp. 3d 1191, 1206 (S.D. Cal. 2023), *reconsideration denied*, No. 23-cv-00057-DMS-AHG, 2024 WL 1361892 (S.D. Cal. Mar. 29, 2024); *see also Hayden v. Bob's Red Mill Nat. Foods, Inc.*, No. 23-cv-03862-HSG, 2024 WL 1643696, at *9 (N.D. Cal. Apr. 16, 2024) (accepting a ConsumerLabs.com report as reliable for the purposes of standing at the Motion to Dismiss stage of the litigation); *see also John v. Whole Foods Mkt. Grp., Inc.*, 858 F.3d 732, 737 (2d Cir. 2017) (holding that at the motion to dismiss stage, the court must "draw from the pleadings all reasonable inferences in the plaintiff's favor and ... presume that general allegations embrace those specific facts that are necessary to

support the claim") (internal quotations marks omitted).  Defendant provides no authority that suggests that one test cannot serve as a plausible basis for a plaintiff's cadmium allegations.[2]

Second, Defendant argues that Plaintiffs fail to plead they personally purchased a Product containing any detectible cadmium, in that they fail to allege that they tested the particular sunflower butter they purchased.  *See* Motion at 13-14.  However, Defendant does not cite any Ninth Circuit decision which would require Plaintiffs to test the sample that they consumed.  To the contrary, the wealth of authority on the subject suggests that Plaintiffs need not test the particular sample they consumed, but need only plausibly allege that they were exposed to the chemical at issue.  *See, e.g., Rodriguez*, 703 F. Supp. 3d at 1205 ("Plaintiffs need not allege that the specific Products they purchased had unsafe levels of lead and/or cadmium, but may simply aver facts from which this Court can make such reasonable inference." (internal quotation marks omitted)).

The Court finds that similar allegations in the product labeling context have repeatedly been upheld as sufficient to establish an economic injury for purposes of both constitutional and statutory standing, and the Court finds no reason to deviate from that precedent here.  *See Barnes v. Nat. Organics, Inc.*, No. 22-cv-00314-JGB-PLA, 2022 WL 4283779, at *4 (C.D. Cal. Sept. 13, 2022).  The Motion as to lack of standing is denied.

### B.  Failure to State a Claim

#### 1.  UCL, CLRA, and GBL

Plaintiffs assert claims for violations of the UCL, the CLRA, and GBL §§ 349 and 350 based on Defendant's alleged fraudulent misrepresentations and omissions.  The UCL proscribes business practices that are "unlawful, unfair or fraudulent" and advertising that is "unfair, deceptive, untrue or misleading."  Cal. Bus. & Prof. Code § 17200.  The CLRA declares specific acts and practices in the sale of goods or services to be unlawful, including making affirmative misrepresentations or omissions regarding the "characteristics," "ingredients," "quality," or "standard" of a particular good.  Cal. Civ. Code § 1770(a)(5), (7).  GBL §§ 349 and 350 similarly proscribe "deceptive acts or practices" and "false advertising" in the conduct of any business.

To state a fraudulent omission or misrepresentation claim under the CLRA or UCL, a plaintiff must plead (1) misrepresentation or omission, (2) reliance, and (3) damages, all with the

---

[2] Although the court in *Rodriguez* did make note of the "repeated[]" independent expert testing, the number of tests conducted was not necessarily dispositive.  *Rodriguez*, 703 F. Supp. 3d at 1205.

particularity required by Rule 9(b). *See Hammerling v. Google LLC*, 615 F. Supp. 3d 1069, 1081 (N.D. Cal. 2022); *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) ("Averments of fraud must be accompanied by the who, what, when, where, and how of the misconduct charged." (internal quotation marks omitted)). CLRA and UCL claims are governed by the "reasonable consumer" test, which holds that a plaintiff must "show that members of the public are likely to be deceived." *Becerra v. Dr Pepper/Seven Up, Inc.*, 945 F.3d 1225, 1228 (9th Cir. 2019) (quoting *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008)). "[T]he reasonable consumer standard requires a probability 'that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled.'" *Id.* (quoting *Lavie v. Procter & Gamble Co.*, 105 Cal. App. 4th 496, 508 (2003)). "Because what a reasonable consumer would believe is generally a question of fact, it is a rare situation in which a motion to dismiss will be granted for failure to satisfy this test." *Hammerling*, 615 F. Supp. 3d at 1082 (internal quotation marks omitted).

To assert a claim under GBL §§ 349 or 350, "a plaintiff must allege that a defendant has engaged in (1) consumer-oriented conduct that is (2) materially misleading and that (3) [the] plaintiff suffered injury as a result of the allegedly deceptive act or practice." *Orlander v. Staples, Inc.*, 802 F.3d 289, 300 (2d Cir. 2015). Claims under GBL §§ 349 and 350 are not subject to the pleading-with-particularity requirements of Rule 9(b). *See Pelman ex rel. Pelman v. McDonald's Corp.*, 396 F.3d 508, 511 (2d Cir. 2005); *Daniel v. Mondelez Int'l, Inc.*, 287 F. Supp. 3d 177, 186 (E.D.N.Y. 2018). Much like as above, courts employ a "reasonable consumer" test to determine if the conduct was materially misleading. *Orlander*, 802 F.3d at 300 ("The New York Court of Appeals has adopted an objective definition of 'misleading,' under which the alleged act must be likely to mislead a reasonable consumer acting reasonably under the circumstances." (internal quotation marks omitted)). "Courts view each allegedly misleading statement in light of its context on the product label or advertisement as a whole." *Belfiore v. Procter & Gamble Co.*, 311 F.R.D. 29, 53 (E.D.N.Y. 2015) (internal quotation marks omitted). Courts have recognized that the "reasonable consumer" inquiry is typically a question of fact, *see Hidalgo v. Johnson & Johnson Consumer Companies, Inc.*, 148 F. Supp. 3d 285, 295 (S.D.N.Y. 2015), to be decided at a later stage in the proceeding, but in appropriate circumstances, a "court may determine as a matter of law that an allegedly deceptive advertisement would not have misled a reasonable consumer," *Fink v. Time Warner Cable*, 714 F.3d 739, 741 (2d Cir. 2013).

7

As the UCL, the CLRA, and GBL §§ 349 and 350 all employ the "reasonable person" test and the same facts underlie the claims, the Court will consider them in tandem, noting that the GBL claims need not be held to the 9(b) standard. *See Gutierrez v. Johnson & Johnson Consumer, Inc.*, No. 19-cv-01345-TWR-AGS, 2020 WL 6106813, at *5 (S.D. Cal. Apr. 27, 2020) ("Consumer protection claims under the CLRA, FAL and UCL are often analyzed together because they share similar attributes.").

Plaintiffs argue that the Products' express representations on both the Products' labels and the Defendant's website mislead reasonable consumers into believing the Products did not contain unsafe levels of cadmium and that Defendant's omissions are similarly misleading. Defendant argues that the Products' express representations do not mislead a reasonable consumer and that the Plaintiffs' omission claim is not actionable and impermissibly pleads around Proposition 65.

a.  *Express Representations*

Plaintiffs argue that Defendant misleads reasonable consumers by "represent[ing] that [its] Products are healthy and made with non-toxic ingredients" while "fail[ing] to disclose that the Products contain unsafe and unlawful levels of cadmium – a known human carcinogen that is linked to a myriad of health issues." FAC ¶¶ 1-2. Plaintiffs point to misrepresentations both on the labels of the Products and Defendant's website. Regarding the packaging, Plaintiffs highlight the following: (1) the labeling statements including "Simple Ingredients," "Natural[]," and "SunButter is packed with oven-roasted sunflower seeds, slow-churned and bursting with flavor & nutrition," (2) the Products' labels, which do not disclose the presence of harmful cadmium; and (3) "the long list of undesired items that the Product boastfully does not contain," including "Non-GMO," "Gluten-Free," and "Free from the Top 8 Allergens" including peanuts, tree-nuts, soy, milk, eggs, wheat, fish, and crustacean shellfish. *Id.* ¶¶ 1, 12; Opp. at 7. On the website, Plaintiffs highlight language suggesting that Defendant does "everything [it] can to make sure kids and adults know what SunButter is made out of" and claims that "SunButter sunflower butter is naturally good for you" and "kid-friendly." FAC ¶¶ 13-16. The Court will first consider the express representations on the website and then those on the Products' labels.

Plaintiffs fail to state claims based on Plaintiffs' affirmative misrepresentation theory to the extent those claims are based on statements from Defendant's website because Plaintiffs do not plead reliance on those alleged misrepresentations, and reliance is a critical element of a claim sounding in fraud. *See Hammerling*, 615 F. Supp. 3d at 1081 (holding that reliance is a required

element); *Orlander*, 802 F.3d at 300 (same).  The Court grants Defendant's motion to dismiss with leave to amend with respect to Plaintiffs' CLRA, UCL, and GBL claims to the extent they are based on alleged misrepresentations on Defendant's website.

Defendant argues that all statements on its label are unrelated to cadmium content and are literally true or non-actionable puffery.  *See* Motion at 16-21.  It argues that the following statements are literally true: "Non-GMO," "Gluten Free," made from "Simple Ingredients," and "Free from the Top 8 Allergens."  Motion at 19.  Plaintiffs counter that while these statements do not specifically mention cadmium, a reasonable consumer could nonetheless be misled to believe that the Products do not contain unsafe levels of cadmium based on the Label Representations. *See* Opp. at 6-11.  Indeed, whether the statements are literally true is not controlling; "[t]he California Supreme Court has recognized that [the CLRA and UCL] prohibit not only advertising which is false, but also advertising which although true, is either actually misleading or which has a capacity, likelihood or tendency to deceive or confuse the public."  *Williams*, 552 F.3d at 938 (internal quotation marks omitted); *see also Orlander*, 802 F.3d at 300 ("The New York Court of Appeals has adopted an objective definition of 'misleading,' under which the alleged act must be 'likely to mislead a reasonable consumer acting reasonably under the circumstances." (internal citation omitted)).  Thus, the question regarding these statements remains whether reasonable consumers would likely be misled (which is addressed below).

Defendant further asserts that the statements "Naturally Savory & Satisfying" and "bursting with flavor & nutrition" are general, vague statements that constitute non-actionable puffery.  Motion at 20.  Puffery is "exaggerated advertising, blustering, and boasting upon which no reasonable buyer would rely."  *Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1145 (9th Cir. 1997).  By contrast, a "specific and measurable advertisement claim of product superiority based on product testing is not puffery." *Id.*  While the Court agrees with Defendant that the statement "Naturally Savory & Satisfying" speaks to flavor and would not communicate anything to a reasonable consumer regarding potential cadmium in the Products, the same cannot be said for the claim that the product is "bursting with… nutrition."  Such a statement speaks to the healthiness of the Products and may suggest to a reasonable consumer that Defendant is careful to ensure the quality and safety of the Products, including the absence of contaminants like cadmium. *See e.g., In re Lindt & Sprungli (USA), Inc., Dark Chocolate Litig.*, No. 23-cv-01186-AMD-JAM, 2024 WL 4107244, at \*6 (E.D.N.Y. Sept. 6, 2024) ("Considering the packaging as a whole,

9

['expertly crafted with the finest ingredients' and the word 'excellence'] are not simply puffery because a reasonable customer could interpret Lindt's statements as representations about the quality of the chocolate's ingredients, and, more specifically, an absence of lead."); *In re Theos Dark Chocolate Litigation*, No. 23-cv-02739-HSG, 2024 WL 4336631, at *10 (N.D. Cal. Sept. 27, 2024) ("quality cacao bean" not nonactionable puffery).

Regarding the reasonable consumer test, the parties trade analyses of a wealth of cases, with the Defendant highlighting cases within the Ninth and Second Circuits regarding the presence of sugar and PFAS in consumer products and one District of New Jersey case involving heavy metals, and the Plaintiffs focusing almost exclusively on heavy metals cases from within the Ninth and Second Circuits. The weight of the precedent suggests that within the Ninth and Second Circuits, Plaintiffs making similar allegations have been allowed to proceed beyond the motion to dismiss stage.

The Defendant's strongest argument is that the claims made by Defendant on its labels in this case are less obviously misleading to a reasonable consumer than those in the other heavy metal cases that have progressed beyond the motion to dismiss stage. *See* Reply at 11; *Rodriguez*, 703 F.Supp.3d at 1211-1212 (where the Court determined that Plaintiffs had plausibly alleged that the statements "SIMPLE DARK CHOCOLATE," "GET BACK TO HUMAN," and "made with fine Trinitario cacao beans" could mislead a reasonable consumer into believing that the products did not contain unsafe levels of heavy metals); *In re Theos*, 2024 WL 4336631, at *10 ("the Court finds that a reasonable consumer could conceivably understand ["pure" and "quality cacao bean"] to suggest the absence of contaminants like Heavy Metals in the Products."), *Barnes*, 2022 WL 4283779 at *6-7 (finding that statements such as "natural supplement for all phases of pregnancy" and "[designed] using safe and natural dietary means," among others, were sufficient to allege "that a reasonable consumer would be misled by the Products' labeling"), *In re Lindt & Sprüngli (USA), Inc.*, 2024 WL 4107244, at *5 (finding that statements such as "premium chocolate products are safe, as well as delightful," "[o]ur standards uphold the integrity of our raw… ingredients," and "expertly crafted with the finest ingredients," among others, were "sufficient to allege that a reasonable consumer could be misled into purchasing or overpaying for Lindt's dark chocolate because the consumer believed that the bars did not contain unsafe amounts of lead"); *Levy v. Hu Prods. LLC*, No. 23-cv-01381-AT, 2024 WL 897495, at *6 (S.D.N.Y. Mar. 1, 2024) (finding that the plaintiff stated a plausible misrepresentation claim where the plaintiff alleged

10

"that at least three elements of Hu's packaging are misleading: (1) the name of the 'Simple' 70% dark chocolate bar; (2) the ingredient list, which does not contain lead; and (3) 'the long list of undesired items that the Product boastfully does not contain,' including refined sugar, dairy, and soy").

Despite the fact that the representations on the Products' labels that the Court has determined are not mere puffery are arguably less misleading than some of those in the cases cited by Plaintiffs, the Court nonetheless finds that a jury could conclude, under both California and New York law, that these claims would likely lead a reasonable consumer to believe that the products are free from heavy metals. Courts have held that claims of simplicity and lists of undesired ingredients that are not present can imply diligence on the part of the Defendant that would suggest to a reasonable consumer that heavy metals are not present. *See, e.g., Levy*, 2024 WL 897495, at *7. Considering also the fact that at this stage of the litigation the Court must view the allegations in the light most favorable to Plaintiffs and the fact that that the reasonable consumer inquiry is a question of fact, best left for a later stage of the litigation, the Court denies the Motion with respect to the affirmative non-puffery representations on the Products' labels. *See Hammerling*, 615 F. Supp. 3d at 1082; *Hidalgo*, 148 F. Supp. 3d at 295; *see also In re Theos*, 2024 WL 4336631, at *10 ("[T]he Court has reservations about Plaintiffs' argument… that, for instance, the descriptor 'Pure' spurs reasonable consumers to come to conclusions about the Heavy Metal content… However, the Court is not permitted to make factual findings at this stage and must be guided by the Ninth Circuit's instruction that generally, 'the question of whether a label is deceptive is a question of fact, not appropriate for resolution at the motion to dismiss phase.'" (citing *Williams*, 552 F.3d at 938)).

> b. *Omissions*

To plausibly allege a fraudulent omission under California law, the omission must either (1) "be contrary to a representation actually made by the defendant," or (2) "an omission of a fact the defendant was obliged to disclose." *Hodsdon v. Mars, Inc.*, 891 F.3d 857, 865 (9th Cir. 2018) (citation and quotations omitted). "[A] defendant only has a duty to disclose when either (1) the defect at issue relates to an unreasonable safety hazard or (2) the defect is material, 'central to the product's function,' and the plaintiff alleges one of the four *LiMandri* factors."[3] *Hammerling*, 615

---

[3] "The *LiMandri* factors are (1) the defendant is in a fiduciary relationship with the plaintiff; (2) the defendant had exclusive knowledge of material facts not known to the plaintiff; (3) the defendant actively conceals a material

F. Supp. 3d at 1085 (quoting *In re Toyota RAV4 Hybrid Fuel Tank Litig.*, 534 F. Supp. 3d 1067, 1101-02 (N.D. Cal. 2021)).

Under their partial omission theory, which is based on the first prong of *Hodsdon*, Plaintiffs argue that they have plausibly alleged a fraudulent omission because the omission of information about the Products' cadmium content is "contrary to a representation actually made by the defendant." Opp. at 13. Partial omission claims are "more straightforward," "well-settled under California law," based on a duty to disclose "aris[ing] from the fact that the omission is contrary to a representation actually made by the defendant," and intended to prevent defendants from making "misleading statements that, in a vacuum, were true while leaving out contradictory information." *Anderson v. Apple Inc.*, 500 F. Supp. 3d 993, 1013 (N.D. Cal. 2020). The Court determined above that the representations of Defendant could cause a jury to conclude that a reasonable consumer would likely believe that the products are free from heavy metals. As the reasonable consumer test applies to both fraudulent representations and fraudulent omissions, *see Rodriguez*, 703 F. Supp. 3d at 1206 ("Plaintiffs must 'show that members of the public are likely to be deceived' by the omission or misrepresentation"), the Court likewise finds that the Plaintiffs have adequately alleged a fraudulent omission. *See also Outboard Marine Corp. v. Superior Ct.*, 52 Cal. App. 3d 30, 36 (Ct. App. 1975) ("It is fundamental that every affirmative misrepresentation of fact works a concealment of the true fact.").

Defendant also argues that Plaintiffs' omission theory with regard to the California Law claims fails because the claims are fully premised on Proposition 65 and yet fail to meet Proposition 65's pre-suit requirements. Motion at 23-26. Plaintiffs respond that the FAC does not allege a Proposition 65 claim, and the claims asserted are not entirely derivative of Proposition 65. Opp. at 17-19.

Proposition 65 provides that "[n]o person in the course of doing business shall knowingly and intentionally expose any individual to a chemical known to the state to cause cancer or reproductive toxicity without first giving clear and reasonable warning to such individual" when the amount of exposure exceeds the "no significant risk level" set by agency regulation. Cal. Health & Safety Code §§ 25249.6, 25249.10(c). Cadmium is regulated by Proposition 65. *See* 27 Cal. Code of Regs. § 27001(b). Individuals may sue to enforce the warning requirements, but

---

fact from the plaintiff; or (4) the defendant makes partial representations but also suppresses some material facts." *Hammerling*, 615 F. Supp. 3d at 1085 (citing *LiMandri v. Judkins*, 52 Cal. App. 4th 326, 336 (1997).

before filing, they must (1) provide at least sixty days' notice of the alleged violation to the Attorney General, the district attorney, city attorney, or prosecutor in whose jurisdiction the violation allegedly occurred, (2) provide notice to the alleged violator, and (3) obtain a certificate of merit affirming that the potential plaintiff consulted with an expert who believes there is "a reasonable and meritorious case for the private action."  Cal. Health & Safety Code § 25249.7(d)(1).  Some Plaintiffs seek to bring suits related to Proposition 65 without completing Proposition 65's pre-suit requirements.  "To determine whether claims are attempts to 'plead around' Proposition 65, courts assess 'whether the claims asserted in the initial complaint . . . are entirely derivative of an unspoken Proposition 65 violation, or whether they assert claims independent of Proposition 65.'"  *Gutierrez*, 2020 WL 6106813, at *4 (citing *Sciortino v. PepsiCo, Inc.*, 108 F. Supp. 3d 780, 792 (N.D. Cal. 2015)).

The claims here, while certainly connected to Proposition 65, are not entirely derivative of a Proposition 65 violation.  Plaintiffs do not allege a failure to warn under Proposition 65 but rather separate misrepresentations to consumers regarding the presence of cadmium in the Products.  *See* Opp. at 17; *In re Theos*, 2024 WL 4336631, at *7.  Furthermore, Plaintiffs rely not only on Proposition 65 but also on other sources such as the CDC, FDA, and ATSDR to allege that beyond the harms covered by Proposition 65 (cancer and reproductive harm), cadmium can, over time, even at a low dosage, cause kidney disease, lung damage, fragile bones, and severe stomach irritation.  FAC ¶¶ 26-27.  "[T]he Ninth Circuit has characterized the rule against using the UCL to plead around an absolute bar to relief as 'rather narrow,'" *Sciortino*, 108 F. Supp. 3d at 793 (quoting *Chabner v. United of Omaha Life Ins. Co.*, 225 F.3d 1042, 1048 (9th Cir. 2000)), and courts in this circuit have consistently determined that similar claims are not barred by Proposition 65.  *See Rodriguez*, 703 F. Supp. 3d at 1208 (allegations of harm "outside the scope of Proposition 65" were "sufficient to support an independent duty to disclose irrespective of Proposition 65" (internal citations and quotation marks omitted)); *Grausz v. Hershey Co.*, 691 F. Supp. 3d 1178, 1191 (S.D. Cal. 2023) ("Ultimately, these pleadings are sufficient to support an independent duty to disclose irrespective of Proposition 65… [because] even if all mention of Proposition 65 were removed from the FAC, Plaintiff's claims would still survive because the FAC alleges Hershey should have disclosed the presence of lead and cadmium in the Products irrespective of Proposition 65, including risks that fall outside the scope of Proposition 65."); *Barnes*, 2022 WL 4283779, at *5 (holding that plaintiff's allegations of misrepresentation to consumers regarding the presence

of heavy metals in the defendant's products, in addition to allegations that heavy metal consumption may contribute to health complications outside the focus of Proposition 65, supported an independent duty to disclose). Thus, as Plaintiffs allege misrepresentations to consumers regarding the presence of cadmium in the Products independent of Proposition 65 and allege health risks that Proposition 65 does not cover, Proposition 65 does not bar Plaintiff's suit. Therefore, the Motion is denied with regard to the California Law fraudulent omission claims.

Plaintiffs also plead a fraudulent omission claim under the GBL. "New York applies the 'exclusive or superior knowledge test' to omission claims under the GBL." *In re Lindt & Sprungli (USA), Inc.*, 2024 WL 4107244, at *6. A "plaintiff bringing an omission-based claim for [GBL] § 349 liability" must plausibly plead that "'the business alone possesses material information that is relevant to the consumer and fails to provide this information,' or that plaintiffs could not 'reasonably have obtained the relevant information they now claim the defendant failed to provide.'" *Paradowski v. Champion Petfoods USA, Inc.*, No. 22-cv-962, 2023 WL 3829559, at *2 (2d Cir. June 6, 2023) (quoting *Oswego Laborers' Loc. 214 Pension Fund v. Marine Midland Bank, N.A.*, 85 N.Y.2d 20, 26 (1995)).

Defendant argues that it did not have exclusive knowledge of the allegedly high levels of cadmium, noting that the FDA had previously published literature about cadmium in sunflower seeds and that there was a publicly available Proposition 65 notice sent to Defendant that predated Plaintiffs' purchases of the Products. *See* Motion at 23. Defendant does not seem to argue that the allegedly high levels of cadmium is not material. Plaintiff asserts that even though there was publicly available information regarding the cadmium content, a plaintiff can still adequately plead exclusive knowledge if the defect was difficult to discover. Opp. at 15. The Court finds that dismissal is not warranted at this stage. While the FDA had suggested that cadmium could be present in sunflower seeds and Defendant had received a publicly available 2022 notice regarding its Products containing unsafe levels of cadmium, *see* FAC ¶ 17, much like in *Levy* and *In re Lindt & Sprüngli (USA), Inc.*, detecting the level of cadmium in the Products that Plaintiffs consumed would have required expensive scientific testing that a consumer could not reasonably be expected to determine. *See In re Lindt & Sprungli (USA), Inc.,* 2024 WL 4107244, at *7 ("[P]laintiffs have plausibly alleged that a consumer could not reasonably have obtained information regarding the amount of lead in Lindt's dark chocolate bars" where consumers lacked the ability to "ascertain the true nature of the ingredients and quality of the Products."); *Levy*, 2024 WL 897495, at *6

14

(denying motion to dismiss regarding fraudulent omission claims where the court found that "Levy has alleged that a consumer could not reasonably determine how much lead the Products contained, as 'detecting these chemicals requires expensive scientific testing.'"); *see also Paradowski*, 2023 WL 3829559, at *3 (dismissing the claim with a fully-developed record at the summary judgment stage, but holding that "[i]f Plaintiff had claimed that Champion's pet foods contained quantities of heavy metals in excess of safe thresholds, then that could be information that 'the business alone' possessed."). As the amount of cadmium that is safe to consume will be a hotly contested issue of fact, dismissal on this issue would be premature. Therefore, the Motion is denied with regard to the New York Law fraudulent omission claims.

2. <u>Breach of Implied Warranties</u>

"Unless excluded or modified [ ], a warranty that goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind." Cal. Com. Code § 2314(1); *see also* N.Y. U.C.C. Law § 2-314(1). Unlike express warranties, which are contractual in nature, the implied warranty of merchantability arises by operation of law. Unless specific disclaimer methods are employed, an implied warranty of merchantability arises and accompanies every retail sale of consumer goods. *See Steiny & Co., Inc. v. California Electric Supply Co.*, 79 Cal. App. 4th 285, 295 (2000) ("The Code imposes warranties of merchantability by operation of law absent contractual modification or disclaimer"). The Products at issue here are thus subject to the implied warranty of merchantability.

Plaintiffs argue that Defendant breached this implied warranty when it sold Products which were not fit for ordinary use because they contain high levels of cadmium. FAC ¶¶ 87-89. Defendant contends that the FAC fails to plausibly allege that the Products are not fit for their ordinary purpose and that Plaintiffs identify no promise on the Products' labels that Defendant has failed to keep. Motion at 27-28.

The California Supreme Court has explained that "[m]erchantability has several meanings, two of which are relevant to the instant case: the product must '[conform] to the promises or affirmations of fact made on the container or label,' and must be 'fit for the ordinary purposes for which such goods are used.'" *Hauter v. Zogarts*, 14 Cal. 3d 104, 117 (Cal. 1975). Similarly, under the New York Uniform Commercial Code, "[t]o be merchantable, goods 'must be . . . fit for the ordinary purposes for which such goods are used; and . . . conform to the promises or affirmations of fact made on the container or label if any.'" *Brodie v. Green Spot Foods, LLC*, 503 F. Supp. 3d

15

1, 9 (S.D.N.Y. 2020) (quoting N.Y. U.C.C. Law § 2-314(2)).  This warranty does not demand that the product "precisely fulfill the expectation of the buyer," but rather "provides for a minimum level of quality." *Viggiano v. Hansen Natural Corp.*, 944 F. Supp. 2d 877, 896 (C.D. Cal. 2013). A breach of the warranty occurs if the product in question "lacks even the most basic fitness for ordinary use." *Birdsong v. Apple, Inc.*, 590 F.3d 955, 958 (9th Cir. 2009).  In cases involving human food, a party can plead that a product violates the implied warranty of merchantability through allegations that the product was unsafe for consumption, contaminated, or contained foreign objects.  *See Thomas v. Costco Wholesale Corp.*, No. 12-cv-02908-BLF, 2014 WL 5872808, *3 (N.D. Cal. Nov. 12, 2014) (citation omitted); *see also Silva v. Smucker Nat. Foods, Inc.*, No. 14-cv-6154-JG-RML, 2015 WL 5360022, at *11 (E.D.N.Y. Sept. 14, 2015) ("Where the sale of a food or beverage is concerned, courts have ruled that the product [must be] fit for human consumption to be of merchantable quality.").

Here, Plaintiffs repeatedly allege that the Products contain an unsafe amount of cadmium that poses an unreasonable safety hazard, far exceeds recognized U.S. health standards, and far exceeds the amount contained in the products of Defendant's competitors, such as Once Again. *See* FAC ¶¶ 2, 17, 18, 19, 32, 39.  Defendant relies primarily on *In re Theos*, 2024 WL 4336631, at *13, in asserting that Plaintiffs have not stated a claim, yet in that case, the court, relying on *Grausz*, 691 F. Supp. 3d 1178, dismissed the claim because Plaintiffs did not "plausibly [plead] that chocolate containing trace amounts of Heavy Metals fails to conform to the standard performance of like products used in the trade, is unfit for its ordinary purpose as a food product or is not merchantable or fit for use as chocolate" (internal quotations marks and brackets omitted). Here, Plaintiffs have pled that Defendant's Products contain significantly more cadmium than competitors and that the levels are far above recognized U.S. health standards.  *See* Opp. at 20. The Court thus concludes that Plaintiffs have plausibly alleged a breach of the implied warranty of merchantability.  *See Rodriguez*, 703 F. Supp. 3d at 1213 ("The ordinary use of food to be eaten; thus, food that cannot be safely consumed 'lacks even the most basic degree of fitness' for its ordinary use" (quoting *Birdsong*, 590 F.3d at 958) (internal quotation marks omitted)); *In re Lindt*, 2024 WL 4107244, at *11 ("The plaintiffs assert that Lindt's chocolate bars 'were not fit for their ordinary use (consumption by consumers) as they include undisclosed levels of Heavy Metals' unsafe for consumption, which is clearly enough at this stage of the litigation.").  As such, the Motion is denied with regard to the breach of implied warranties claim.

**IV.**     <u>**Conclusion**</u>

Based on the foregoing discussion, the Court would grant the motion in part with leave to amend and deny the motion in part.